J-A15022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD ARTHUR HAVERKOST | : | |
| | : | |
| Appellant | : | No. 835 WDA 2021 |

Appeal from the Judgment of Sentence Entered February 24, 2021,
in the Court of Common Pleas of Armstrong County,
Criminal Division at No(s): CP-03-CR-0000830-2019.

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: AUGUST 5, 2022**

Donald Haverkost appeals from his judgment of sentence imposed after a jury convicted him of two counts of aggravated indecent assault and two counts of indecent assault.[1] After review, we affirm.

The trial court summarized the facts as follows:

On or about the evening of March 16, 2019, S.Y., then 10 years old, was at Haverkost's residence with her brother, H.Y., then four years old. S.Y.'s and H.Y.'s mother, Jessica Kinzey, was in the process of moving out of the residence of Joshua Reilly, her soon-to-be ex-boyfriend. Kinzey and Reilly had been in a relationship for almost two years, and Kinzey, S.Y., and H.Y. resided with Reilly for approximately 18 months. Although their relationship appeared to be over, Kinzey and Reilly nevertheless went out to dinner that evening to determine if the relationship could be salvaged.

Haverkost is Reilly's step-father[,] and his wife, Lisa Haverkost, is Reilly's mother. They live next door to Reilly, and

_____

[1] 18 Pa.C.S.A. §§ 3125(a)(7) and 3126(a)(7), respectively.

while S.Y. and H.Y. lived with Reilly, they spent considerable time at the Haverkost residence. On the evening of March 16, 2019, the Haverkosts agreed to babysit the children at their residence while Kinzey and Riley went to dinner. Late in the evening, when Kinzey and Reilly had not yet returned from dinner, Haverkost texted Kinzey to ask if S.Y. and H.Y. should stay overnight. The children were willing, and Kinzey agreed. While the Haverkosts and the children were watching television in the living room, S.Y. testified that Haverkost reached under the waist of her pants and first touched, and then stuck his finger inside, her vagina. S.Y. further testified that after she and her brother went upstairs to go to bed, Haverkost came up to tuck them in and again stuck his finger in her vagina, this time making the comment, "Mmm, tasty." S.Y. did not report the incident the next day or for several months thereafter.

In June 2019, while S.Y. and Kinzey . . . were discussing the beginning of S.Y.'s menstrual period, S.Y. told Kinzey that "Pappy Don," a name she used for Haverkost on occasion, had "touched her there," referring to her vagina. Kinzey thereafter spoke with Reilly and told him what had happened, but did not make any immediate report to the police. S.Y. would soon be making a special visit to the State of Washington to visit her father, Brian Young, and her father's side of the family. Kinzey wanted that time to be a happy time for S.Y. and wanted the time to consider the best course of action. During that trip to Washington, in July 2019, S.Y. disclosed to her paternal grandmother that Haverkost had stuck his finger in her vagina and then licked his fingers saying, "Mmm, tasty." When his mother told him what S.Y. disclosed, Young called Kinzey to ask about the incident. When Kinzey confirmed that S.Y. had also reported the incident to her, Young brought the children back to Pennsylvania.

On July 23, 2019, Young and Kinzey took S.Y. to the Kiskiminetas Police Department to report the incident. Kinzey reported what S.Y. had told her and her grandmother. Officer Jerrod A. Thompson conducted the interview, but did not speak with S.Y. on that day, opting rather to request a forensic interview. S.Y., was forensically interviewed on July 25, 2019, during which she again reiterated the incidents that occurred on Haverkost's sofa and in the bedroom where the children slept. Thompson thereafter filed charges that, after preliminary hearing, were held over to [the trial court].

Trial Court Opinion, 8/31/21, at 2–4 (record citations omitted).

The case proceeded to a jury trial in October 2020, after which the jury convicted Haverkost of the above offenses. On February 24, 2021, the trial court sentenced Haverkost to an aggregate term of 48 to 96 months of incarceration, followed by 6 years of probation. Haverkost filed post-sentence motions, which were denied by operation of law on July 20, 2021. Haverkost filed a timely notice of appeal. Haverkost and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Haverkost raises two issues on appeal:

I.   Was the verdict rendered against and contrary to the sufficiency of the evidence admitted, and all reasonable inferences that could be drawn therefrom, such that viewed in a light most favorable to the Commonwealth, said evidence was insufficient to support the jury's verdict beyond a reasonable doubt?

II.  Did the trial court err in denying Mr. Haverkost's Post-Sentence Motion seeking a new trial on the basis that the evidence presented by the Commonwealth at trial was insufficient to sustain the verdict due to the fact that the verdict rendered was contrary to the weight of the evidence in that said evidence was so contrary to the verdict that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail?

Haverkost's Brief, at 7 (issues reordered for ease of disposition).

First, Haverkost challenges the sufficiency of the evidence. We review this claim based on the following well-established principles:

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a

- 3 -

reasonable doubt." ***Commonwealth v. Hughes***, 555 A.2d 1264, 1267 (Pa. 1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the factfinder properly could have based its verdict." ***Id.***

***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013) (citation formatting altered).

Our Supreme Court has further explained how an appellate court reviews a sufficiency challenge:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1236 n.2 (Pa. 2007).

Additionally, this Court has stated that an appellant must articulate the elements of each crime that the Commonwealth failed to prove.

If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal.

***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008), (quoting ***Commonwealth v. Flores***, 921 A.2d 517, 522–23 (Pa. Super. 2007)).

- 4 -

Here, Haverkost fails to specify in his 1925(b) statement which elements of either aggravated indecent assault or indecent assault lacked sufficient evidence. *Williams*, 959 A.2d at 1257. Instead, he copies verbatim the weight argument from his 1925(b) statement, which argues credibility of the witnesses, and presents it as a sufficiency challenge in the same statement. Because Haverkost failed to identify any specific elements that the Commonwealth failed to prove beyond a reasonable doubt, he waived his sufficiency claim on appeal. *Id.*

Even if Haverkost had not waived his sufficiency challenge, we would find that this claim fails on its merits. The Pennsylvania Criminal Code defines aggravated indecent assault, in relevant part, as follows:

> [A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault, a felony of the second degree, if:
>
> *     *     *
>
> (7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3125(a)(7).

The Code also provides that a person commits indecent assault if the following elements are met:

> the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> *     *     *

- 5 -

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3126(a)(7). "Indecent contact" is further defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101(a)(7).

The trial court assessed Haverkost's sufficiency claim as follows:

> The Commonwealth presented the testimony of S.Y., who testified that Haverkost penetrated her vagina with his finger on two separate occasions on the evening of March 16, 2019. She testified in detail to the circumstances surrounding the incidents. S.Y.'s mother and grandmother testified to S.Y.'s disclosures to them of what happened, both of which were unprompted and volunteered by S.Y. Although there were certain minor discrepancies in the three individuals' testimony, there clearly was sufficient uncontradicted evidence to establish beyond a reasonable doubt all of the elements of both aggravated indecent assault and indecent assault. On that basis, Haverkost's sufficiency challenge, even if not waived, is without merit.

Trial Court Opinion, 8/31/21, at 6.

The record supports the trial court's analysis that the Commonwealth presented sufficient evidence to sustain Haverkost's convictions. In a prosecution for an offense under Chapter 31 of the Crimes Code, "[t]he testimony of a complainant need not be corroborated." 18 Pa.C.S.A. § 3106. The victim testified that Haverkost digitally penetrated her vagina in two separate incidents. N.T., 10/07/20, at 109–111. In addition, the victim testified that her birthday was February 28, 2009, making her less than 13 years of age at the time of the incidents. N.T., 10/07/20, at 112. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to

establish Haverkost committed aggravated indecent assault and indecent assault on two occasions, and all elements of both crimes were proven beyond a reasonable doubt.

Turning to Haverkost's second issue, we address whether the verdict was against the weight of the evidence. Our Supreme Court has stated that a trial court must first review a weight challenge using the following test:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations and quotations omitted).

The High Court observed that the appellate standard of review differs from that of a trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Clay* 64 A.3d at 1055 (quoting *Widmer*, 744 A.2d at 753) (citations omitted).

When we review whether the trial court abused its discretion, our precedents have outlined when such abuse occurs.

"An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Harrington*, 262 A.3d 639, 644 (Pa. Super. 2021) (quoting *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015)).

The trial court addressed Haverkost's weight of the evidence challenge as follows:

> The Court cannot conclude that the verdict was so against the weight of the evidence that it shocks the judicial conscience. In his post-sentence motion and concise statement, Haverkost argues at length that S.Y.'s testimony was not credible and that his testimony was so credible that it should shock the conscience that the jury believed the victim and not him. He argues that S.Y.'s accounts of the two incidents underlying his convictions were general, that she contradicted her testimony at the preliminary hearing, and that she did not make a prompt disclosure of the incidents. The Court disagrees.

> First, S.Y.'s testimony about the incidents was in no way generic or general. She remembered the day on which they happened (the "leprechaun" holiday), the specific locations, the appearance of Haverkost's residence, and who was present. Although each of her explanations of the incidents (to her mother, to her grandmother, during the forensic [interview], at the preliminary hearing, and at trial) might have varied to some degree, they were not necessarily inconsistent and certainly not to a degree that would render her testimony incredible as a matter of law. Second, regarding the preliminary hearing, the Court is unaware of what was presented because no transcript has been provided. To the extent that S.Y.'s trial testimony was inconsistent with her preliminary hearing testimony, Haverkost's counsel had ample opportunity to, and did, cross-examine her about any such inconsistencies. S.Y.'s responses to those questions did not reveal that her trial testimony was so tenuous, vague, and uncertain so as to require that the verdict be vacated.

Third, regarding S.Y.'s delay in disclosing the incidents, the Commonwealth presented the testimony of Kevin Rua, Ph.D., a professional forensic interviewer who was certified by the Court as an expert in the field of child victim behavior as it relates to sexual abuse. Dr. Rua explained the causes and implications of delayed reports of sexual abuse by children, which testimony, if credited by the jury, sufficiently explained S.Y.'s delayed reporting.

With regard to the testimony of S.Y.'s mother and grandmother, Haverkost argues that it did not corroborate S.Y.'s testimony and, therefore, had no value. The Court again disagrees. Both S.Y.'s mother and grandmother testified that S.Y. reported to each of them separately the incidents that occurred at Haverkost's residence. Although S.Y. explained the incidents in a slightly different way, there is no question that she reported the same incidents, involving the same individual, occurring at the same location, and involving the same touching and penetration. Haverkost's argument to the contrary is without merit.

Haverkost argues finally that his and his wife's testimony were more credible than all of the Commonwealth's witnesses and, therefore, the jury's verdict should be set aside. Although both Haverkost and his wife both testified that nothing like what S.Y. described occurred on the evening in question and that Mrs. Haverkost was awake the entire time in the living room, the jury was free to disbelieve their testimony and credit S.Y.'s testimony to the contrary. Haverkost has not offered any substantial reason why the jury's credibility determinations ought to shock the conscience, and the Court cannot discern any. On that basis, Haverkost's weight challenge fails.

Trial Court Opinion, 8/31/21, at 7–9 (record citations omitted).

At trial, the Commonwealth presented substantial evidence to support the jury's verdict. The jury, as the trier of fact, was permitted to make credibility assessments and was free to disbelieve Haverkost's self-serving testimony. The trial court, which observed the evidence presented to the jury, concluded that the jury's verdict did not shock its conscience.

In reviewing the trial court's decision, we discern no abuse of discretion. Indeed, Haverkost makes no argument as to how the trial court abused its discretion. Instead, he argues the credibility of the witnesses, which we cannot review. Accordingly, Haverkost does not persuade us that that the trial court overrode or misapplied the law; nor are we convinced the decision was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. Thus, Haverkost's weight of the evidence claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/2022